UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                        :

AARP,                                    :

                                    :

                Plaintiff,        :

                                    :            06 Civ. 81 (SCR)

       -v.-                        :

                                    :      **OPINION AND ORDER**

200 KELSEY ASSOCIATES, LLC, and   :

MICHAEL REICH,               :

                                    :

                Defendants.    :

                                    :
----------------------------------------------------------------x

Chryssa V. Valletta, John J. Dabney (of Counsel),
McDermott Will & Emery LLP, New York, NY,
for plaintiff.

Edmund J. Ferdinand, III, Susan M. Schlesinger (of
Counsel), Grimes & Battersby, LLP, New York, NY,
for defendants.


GERARD E. LYNCH, District Judge:

      Plaintiff AARP commenced this action against defendants 200 Kelsey Associates, LLC,

and its principal shareholder and managing member, Michael Reich, alleging trademark

infringement and related causes of action in violation of the Lanham Act, 15 U.S.C. § 1051 *et*

*seq*., and New York state law.  Plaintiff seeks, inter alia, permanent injunctive relief and a

declaration that its federal trademark registration is valid and has been (and will be) infringed by

defendants.  Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendants now

move to dismiss the complaint for lack of jurisdiction and for failure to state a claim.  The

motion will be denied.[1]

## BACKGROUND

The facts set forth below are based on the allegations of the complaint, which are assumed to be true for purposes of resolving this motion to dismiss.

A.    The Dispute

Plaintiff AARP is a non-profit organization dedicated to addressing the needs, and promoting the interests, of persons age 50 and older.  (Compl. ¶ 8.)[2]  With a membership exceeding 35 million, it is the largest membership organization in the United States for persons in that age category.  (Id. ¶¶ 8-9.)  In 1958, AARP launched its flagship publication, Modern Maturity magazine.  (P. Mem. 1.)  In 1962, AARP obtained a federal trademark registration for the Modern Maturity mark.  (Id. 3; cf. Compl. ¶ 12.)  Modern Maturity was provided to AARP members for some 45 years.  (Compl. ¶ 10; P. Mem. 1, 3.)  During that time, AARP invested hundreds of millions of dollars in the Modern Maturity mark.  (Compl. ¶ 13.)  While AARP changed the name of its publication to *AARP The Magazine* in 2003, it owns and uses domain names containing the Modern Maturity mark, provides back issues of Modern Maturity on its website, and employs the Modern Maturity mark in connection with various other products and services.  (Id. ¶¶ 13-15.)

---

[1] Due to an extreme backlog in the White Plains Division of this Court, this matter was recently assigned by the Chief Judge to the undersigned judge, solely for purposes of deciding the instant long-pending motion, with the gracious consent of the Honorable Stephen C. Robinson, United States District Judge, to whom this case is otherwise assigned.  The case remains assigned to Judge Robinson for all other purposes.

[2] All references to the complaint are to plaintiff's First Amended Complaint, dated January 11, 2006.

Defendants 200 Kelsey Associates and Michael Reich seek to launch a new magazine called Modern Maturity, which is also intended for senior citizens.  (Id. ¶ 20; P. Mem. 3.)  In preparation for this launch, they have contacted potential publishers, generated written business plans concerning the design and sale of the magazine, and engaged in extensive market analysis. (Compl. ¶ 23; P. Mem. 3-4.)  Defendants have also filed an intent-to-use trademark application with the United States Patent and Trademark Office ("PTO") for "Modern Maturity," a "[m]agazine published periodically in the field of mature lifestyles."  (Compl. ¶ 20.)   This application included a sworn declaration attesting defendants' bona fide intent to use the Modern Maturity mark in commerce.  (Id. ¶ 23.)

The PTO rejected defendants' application on the ground that the mark they sought to register was confusingly similar to AARP's registered Modern Maturity mark.  (Id. ¶ 20.) Following that decision, defendants petitioned the Trademark Trial and Appeal Board ("TTAB") to cancel plaintiff's registration of the Modern Maturity mark, arguing that the mark has been abandoned.  (Id. ¶ 21; D. Mem. 1.)  Proceedings on that petition were suspended pending the outcome of this action.  (Compl. ¶ 21; P. Mem. 12.)

     B.    <u>Procedural History</u>

On January 5, 2006, AARP brought this action, alleging trademark infringement and various related causes of action in violation of the Lanham Act and New York state law. Defendants consented to entry of a preliminary injunction enjoining defendants' use or attempted use of the Modern Maturity mark, which was duly entered on March 7, 2006.  On April 20, 2006, defendants moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of jurisdiction and for failure to state a claim.

Defendants argue that because plaintiff has not alleged that they have actually published or begun selling their Modern Maturity magazine, plaintiff can demonstrate neither the existence of a case or controversy sufficient to confer jurisdiction on this Court (D. Mem. 12-13), nor the "use in commerce" of the Modern Maturity mark required to state a claim for trademark infringement and the related causes of action alleged in the complaint. (Id. 2, 3-8.) Defendants further argue that, absent subject matter jurisdiction over plaintiff's trademark infringement and related claims, plaintiff's request for a declaration of the validity of its trademark registration is improper. (D. Mem. 9-10.)

In opposition, plaintiff contends that it need not wait to seek relief until defendants' magazine actually hits the newsstand. Rather, it need only "allege sufficient facts, including reasonable inferences that can be drawn from those facts, which show that defendant[s] ha[ve] used the allegedly infringing mark in commerce or that such use is imminent and impending." (P. Mem. 2.) Because plaintiff has alleged that defendants "are actively seeking licensees to publish a magazine called 'Modern Maturity'" and "have conducted [an] extensive analysis of the publishing industry" in preparation for the launch of such a publication (Compl. ¶ 23), it argues that it has satisfied the relevant standards and that defendants' motion to dismiss should be denied in its entirety. (P. Mem. 2-4.)

**DISCUSSION**

**I.      Motion To Dismiss Standard**

A motion to dismiss for lack of subject matter jurisdiction will be granted "when the district court lacks the statutory or constitutional power to adjudicate" an action. Luckett v. Bure, 290 F.3d 493, 496 (2d Cir. 2002), quoting Makarova v. United States, 201 F.3d 110, 113

4

(2d Cir. 2000).  A motion to dismiss for failure to state a claim, which "tests the facial legal sufficiency of the complaint," Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F. Supp. 117, 121 (S.D.N.Y. 1996), will be granted only where the plaintiff has not alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

In resolving such motions to dismiss, a court must accept as true all factual allegations in the complaint, and draw all reasonable inferences in the light most favorable to the plaintiff.  See Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Heidsieck & Co. Monopole S.A. v. Piper-Heidsieck, No. 98 Civ. 7741, 2001 WL 263029, at *3 (S.D.N.Y. Mar. 15, 2001).  "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atlantic Mut. Ins. Co., 968 F.2d at 198.

Because dismissal of an action for lack of jurisdiction renders all other accompanying motions moot, see Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990), and because "a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction," Magee v. Nassau County Med. Ctr., 27 F. Supp. 2d, 154, 158 (E.D.N.Y. 1998), a court confronted with motions to dismiss both for lack of jurisdiction and for failure to state a claim should decide the jurisdictional question first.  See Rhulen, 896 F.2d at 678; Magee, 27 F. Supp. 2d at 158.  In doing so, "the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." Luckett, 290 F.3d at 497.

## II.    Motion To Dismiss for Lack of a Case or Controversy

Defendants argue that the Court lacks jurisdiction to issue a declaratory judgment regarding plaintiff's trademark infringement claim because there is no actual controversy between the parties.  (D. Mem. 10.)  By defendants' account, nothing short of their actually publishing, distributing, selling, or offering to sell a magazine called Modern Maturity would create a case or controversy.  (Id. 2.)  Plaintiff, however, argues that, in preparation for the launch of their magazine, defendants have used the Modern Maturity mark in numerous ways, and that this use is sufficient to bring the parties into adversarial conflict.  (P. Mem. 13; cf. id. 7-8.)  Because defendants overstate the threshold for demonstrating the existence of a case or controversy, and plaintiffs have demonstrated the existence of a case or controversy, defendants' jurisdictional motion is denied.[3]

Article III of the United States Constitution limits the subject matter jurisdiction of the federal courts to cases or controversies.  See U.S. Const. Art. III § 2.  This "case or controversy requirement" is the basis for the doctrines of mootness, ripeness, and standing.  See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 335 (2006).  The Declaratory Judgment Act (the "Act") provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Although declaratory judgment actions were once thought to be inherently at odds with the case

---

[3] Defendants also argue that plaintiff's failure to allege actual use in commerce defeats the existence of any federal question, thus providing an independent basis for dismissal.  (D. Mem. 11.)  This argument overlaps defendants' Rule 12(b)(6) motion, which is addressed below.

or controversy requirement, see Willing v. Chicago Auditorium Ass'n, 277 U.S. 274, 289

(1928), the constitutionality of the Act has long been established, primarily because a plaintiff

seeking relief pursuant to its terms still must establish the existence of a controversy within the

meaning of Article III.[4]  See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937); see

also Matthew Bender & Co., Inc. v. West Publ'g Co., No. 94 Civ. 0589, 1996 WL 223917, at *1

(S.D.N.Y. May 2, 1996) (noting that plaintiff bears the burden of demonstrating that jurisdiction

over the declaratory judgment action existed at the time the action was filed and has continued to

exist since that time).

       The Supreme Court has not articulated a bright-line rule for determining when a case

satisfies the controversy requirement.  In fact, it has stated that "[t]he difference between an

abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is

necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise

test for determining in every case whether there is such a controversy."  Md. Cas. Co. v. Pac.

Coal & Oil Co., 312 U.S. 270, 273 (1941).  Claims that involve "contingent future events that

may not occur as anticipated, or indeed may not occur at all," will not suffice.  Thomas v. Union

Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985) (quotation omitted).  Rather, "[t]he

disagreement . . . must have taken on fixed and final shape so that a court can see what legal

issues it is deciding, what effect its decision will have on the adversaries, and some useful

purpose to be achieved in deciding them."  Jenkins v. United States, 386 F.3d 415, 417-18 (2d

_____

       [4] The Act does not supply an independent ground for subject matter jurisdiction.  Thus,
"an action for declaratory relief under the Act may ordinarily be brought only if subject matter
jurisdiction would exist in a coercive action between the parties."  Progressive Apparel Group,
Inc. v. Anheuser-Busch, Inc., No. 95 Civ. 2794, 1996 WL 50227, at *2 (S.D.N.Y. Feb. 8, 1996).

Cir. 2004) (quotation omitted).

Even after a plaintiff demonstrates that the case or controversy requirement has been met, the permissive language of § 2201(a) gives a district court discretion to determine whether or not it should actually exercise its declaratory judgment authority.  A court must, however, exercise that authority "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Continental Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 736 (2d Cir. 1992).

Declaratory judgment actions involving intellectual property rights are most often brought by potential infringers seeking a declaration of noninfringement or invalidity.[5]  See, e.g., Lang v. Pac. Marine & Supply Co., Ltd., 895 F.2d 761, 763 (Fed. Cir. 1990); Airship Indus. (UK) Ltd. v. Goodyear Tire & Rubber Co., 643 F. Supp. 754, 759 (S.D.N.Y. 1986).  However, such actions have also been permitted when brought by intellectual property owners seeking declarations of impending infringement.  See Lang, 895 F.2d at 763 (collecting cases). Consistent with the Federal Circuit's holding in Lang, if the controversy requirement is met, there is no apparent reason why plaintiff should be precluded from seeking a declaration of infringement, particularly when defendants could have maintained such an action under the very same circumstances.  See id. at 764 ("If the controversy requirement is met by a sufficient allegation of immediacy and reality, we see no reason why a patentee should be unable to seek a

---

[5] A number of the cases cited in this opinion discuss questions of justiciability in the context of patent infringement actions.  However, these cases constitute valid precedent given this Court's pronouncement that "[t]here is no persuasive reason to distinguish between patent infringement and trademark infringement for purposes of determining whether a justiciable controversy exists."  Id.

declaration of infringement against a future infringer when a future infringer is able to maintain a declaratory judgment action for noninfringement under the same circumstances. . . . [T]he fact that the patent owner, unlike the accused infringer, will have an express statutory remedy for infringement at a later time is irrelevant.  The Declaratory Judgment Act applies 'whether or not further relief is or could be sought.'"), quoting 28 U.S.C. § 2201.

Prior to 2007, "[t]he Second Circuit . . . articulated a two-pronged test for determining the existence of an actual controversy in declaratory judgment cases involving trademarks.  First, the defendant's conduct must have 'created a real and reasonable apprehension of liability on the part of plaintiff.'  Second, the plaintiff must have 'engaged in a course of conduct which has brought it into adversarial conflict with the defendant.'  Both elements must exist at the time the declaratory judgment action is filed."  The Ritz Hotel, Ltd. v. Shen Mfg. Co., 384 F. Supp. 2d 678, 682 (S.D.N.Y. 2005); see also Starter Corp. v. Converse, Inc., 84 F.3d 592, 595 (2d Cir. 1996).  Because, as discussed above, declaratory judgment actions are most often brought by potential infringers seeking a declaration of noninfringement or invalidity, this test has been modified where the purported *owner* of an intellectual property right seeks a declaratory judgment to protect that right from future infringement.  See Lang, 895 F.2d at 764.  Under the modified test, for a controversy to exist, "(1) the defendant must be engaged in an activity directed toward making, selling, or using subject to an infringement charge under 35 U.S.C. § 271(a) (1982), or be making meaningful preparation for such activity; and (2) acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming."  Id.  As noted by the Federal Circuit, this test essentially is the converse of the test applied in declaratory

judgment actions brought by potential infringers.  See Lang, 895 F.2d at 794.

Applying these principles, the Second Circuit has concluded that a case or controversy exists in the trademark context "where a party has engaged in a course of conduct evidencing a 'definite intent and apparent ability to commence use' of the [allegedly infringing] marks on [a] product."[6]  Starter Corp., 84 F.3d at 595-96 (quotation omitted).  Demonstrating such intent requires more than simply showing that a party has a "vague or general desire" to use the mark(s) at issue.  See id. at 596.  Rather, the party "must be engaged in 'meaningful preparation,' such that it is 'actively preparing to produce the article in question.  This is the last point before the point of no return.'"  Id., quoting Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988); see also G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc., 873 F.2d 985, 990 (7th Cir. 1989).  Because "[d]eclaratory judgment actions are particularly useful in resolving trademark disputes . . . , the finding of an actual controversy should be determined with some liberality."  Starter, 84 F.3d at 596.  However, even "the most liberal interpretation of justiciability will not admit to an active controversy in the absence of either some imminent infringing conduct *or some assertion of the same*."  Id. (emphasis in original), quoting Polaroid Corp. v. Berkey Photo, Inc., 425 F. Supp. 605, 609 (D. Del. 1976).

---

[6] Courts in this circuit have, at times, used various formulations of this "intent and ability" test.  See Matthew Bender, 1996 WL 223917, at *2 (collecting cases).  However, this Court has noted that "[a]lthough the wording of the[] tests differs somewhat, they share the basic purpose of ensuring that the plaintiff truly intends and is able to undertake a potentially infringing activity, while acknowledging that 'it would be economically wasteful to require a plaintiff to embark on an actual program of manufacture, use or sale which may turn out to be illegal.'  Furthermore, '[w]hether a declaratory plaintiff's ability and definite intention to undertake a potentially infringing activity constitutes sufficient 'preparation' is a question of degree to be resolved on a case-by-case basis.'"  Id. at *3 (quotations omitted).

In addressing the "immediate intention and apparent ability" test, a court's "concern is not that the [allegedly infringing product] will never be produced, but rather that because of the relatively early stage of its development, the design [before the court] may not be the design which is ultimately produced and marketed." Int'l Harvester Co. v. Deere & Co., 623 F.2d 1207, 1216 (7th Cir. 1980).  To satisfy these concerns, "the plaintiff must establish that the product presented to the court is the same product which will be produced if a declaration of noninfringement is obtained." Id.

Although for much of the recent past the "reasonable apprehension of imminent suit" test – which refers to two-pronged standards like the one announced in Starter – has governed the determination of an actual case or controversy in the context of intellectual property-related declaratory judgment actions, the Supreme Court's decision in MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), lowered the threshold for proving the existence of such controversies. See Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1240-42 (10th Cir. 2008) (concluding that the reasonable apprehension of imminent suit test is no longer good law after MedImmune); SanDisk Corp. v. STMicroelecs., Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in MedImmune represents a rejection of our reasonable apprehension of suit test."); Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc., 523 F. Supp. 2d 376, 382 (S.D.N.Y. 2007) (noting that the Supreme Court "has suggested that a lower threshold is required to find a case or controversy under the Declaratory Judgment Act"); Linzer Prods. Corp. v. Sekar, 499 F. Supp. 2d 540, 559 (S.D.N.Y. 2007) (noting that the "reasonable apprehension of suit" test was rejected by the Supreme Court in MedImmune); Frederick Goldman, Inc. v. West, No. 06 Civ. 3413, 2007 WL 1989291, at *3 (S.D.N.Y. July 6, 2007)

("Recent decisions of the Supreme Court have . . . in effect lower[ed] the bar for a plaintiff to bring a declaratory judgment action.").

In <u>MedImmune</u>, the Supreme Court found an actual controversy, even though plaintiff had complied with the defendants' demands by paying royalties under protest, had not infringed any of defendants' rights, and therefore had no reasonable fear of imminent suit.  <u>See</u> <u>MedImmune</u>, 549 U.S. at 128, 137.  In reaching this conclusion, the Court noted that establishing a controversy for purposes of a declaratory judgment action requires no greater showing than that required under Article III.  <u>See id</u>. at 126-27.  The Court held that neither the Act nor Article III requires a plaintiff to expose himself to liability before bringing a declaratory judgment action.  <u>See id</u>. at 137.  Rather, so long as "[t]he factual and legal dimensions of the dispute are well defined" and "nothing about the dispute would render it unfit for judicial resolution," jurisdiction is not defeated by a party's decision to refrain from taking some action and thus "make[] what would otherwise be an imminent threat [of suit] at least remote, if not nonexistent."  <u>Id</u>. at 128, 137; <u>see also SanDisk</u>, 480 F.3d at 1381 ("[W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.").  The true test is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  <u>MedImmune</u>, 549 U.S. at 127.

While it is clear that the reasonable apprehension of suit test has been rejected, it is unclear whether the "intent and ability" standard has been similarly discredited. On the one hand, that standard is derived from the now-rejected reasonable apprehension of suit test. See Starter, 84 F.3d at 595 (treating the "intent and ability" test as related to the second prong of the reasonable apprehension of imminent suit test, i.e., whether plaintiff has engaged in a course of conduct bringing it into adversarial conflict with defendant). On the other hand, the "intent and ability" test stems from the portion of the reasonable apprehension of suit test dealing with the extent to which the parties have been sufficiently brought into adversarial conflict with one another, and nothing in MedImmune purports to have changed the fundamental requirement of adversity. Moreover, the thrust of the "intent and ability" test is the immediacy of the dispute, a requirement the validity of which MedImmune specifically upheld. See MedImmune, 549 U.S. at 127.

The court in Geisha, LLC v. Tuccillo, 525 F. Supp. 2d 1002 (N.D. Ill. 2007), apparently the only post-MedImmune case addressing the "intent and ability" of a potential infringer, considered whether the controversy requirement was met where a trademark owner sought a declaration of infringement based on defendant's planned opening of a restaurant using the name of the mark at issue. See id. at 1003, 1007-08. There, defendant had filed an intent-to-use trademark registration application with the PTO nine months after the opening of plaintiff's restaurant Japonais. See id. at 1006. The application pertained to defendant's intended use of a stylized version of the word Japonais, also in connection with a restaurant. See id. When defendant refused plaintiff's request that it voluntarily abandon the application, plaintiff filed suit in the district court. See id. at 1007. Defendant subsequently argued that the court lacked

13

jurisdiction under the Act because there was no "real or immediate controversy."  <u>Id</u>. at 1009.

Prior to ruling on defendant's claim, the court noted that although defendant had never used the name Japonais in connection with the provision of any restaurant or lounge services, it was undisputed that he had "a firm intent" to do so.  <u>Id</u>. at 1007.  Turning to the merits of the jurisdictional claim, the court noted that the "reasonable apprehension of suit test" was inapposite, not only because "the case reverse[d] the roles of the parties in a typical, 'defensive' declaratory judgment action," but also because the Federal Circuit had discarded the test following <u>MedImmune</u>.  <u>Id</u>. at 1010.  Although the court acknowledged that the test articulated in <u>Lang</u> would normally govern an offensive declaratory judgment of the kind before it, it concluded that the <u>Lang</u> test was also inapposite "[g]iven the close similarity between [that test] and the traditional reasonable-apprehension-of-suit test."  <u>Id</u>. at 1012-13.  Ultimately, the court concluded that the relevant test was "whether, 'under all the circumstances,' a 'definite and concrete' controversy exists between parties having adverse legal interests; the controversy must be of sufficient 'immediacy and reality to warrant the issuance of a declaratory judgment,' such that a declaration would not simply amount to 'an opinion advising what the law would be upon a hypothetical state of facts.'"  <u>Id</u>. at 1013, quoting <u>MedImmune</u>, 549 U.S. at 127.

Applying this test, the court's determination hinged largely on the extent to which defendant's preparations to open the allegedly infringing restaurant rendered the dispute of sufficient "immediacy and reality" to constitute a true controversy.  <u>See id</u>. at 1013-17.  Rejecting plaintiff's claim that an actual controversy was presented, the court held that defendant's "actual preparations for opening a restaurant [did] not appear to have advanced significantly beyond [his] statement of intent."  <u>Id</u>. at 1015.  These preparations were limited to

14

"'play[ing] around with' a menu and searching for a suitable location." <u>Id</u>.  While the court acknowledged that the search for a location would normally carry more weight, in this case it found that defendant's search did "not appear either serious or advanced." <u>Id</u>.  Defendant had no real estate agent, but was merely driving around looking at properties in locations as diverse as Manhattan's Meatpacking District and Nassau County.  <u>See id</u>.  These facts, together with the absence of any record evidence that defendant had ever before opened a restaurant, led the court to conclude that defendant's opening of a restaurant using the Japonais mark "was far from imminent when th[e] action was filed." <u>Id</u>. 1015-16.  The court was careful to note, however, that "it [was] unclear whether the fact that [defendant] was not using the mark would, in itself, defeat declaratory judgment jurisdiction."  <u>Id</u>. at 1018.

While there are other cases addressing the factual circumstances under which a party's planned production, distribution, or sale of an allegedly infringing product gives rise to a case or controversy, these cases pre-date <u>MedImmune</u> and therefore do not reflect any changes in the applicable legal standard that may have been occasioned by that decision.  Nevertheless, because their reasoning often concerns how close the potential infringer is to actually distributing or selling the allegedly infringing goods or services, the cases provide a useful framework for determining when a dispute is of sufficient "immediacy and reality" to constitute a controversy.

A review of the cases demonstrates that where a party has not yet identified a name or location of a business, or has not secured – or attempted to secure – the central components of the formula ordinarily required for production, the case or controversy standard is unlikely to be satisfied.  <u>See</u> <u>Sobini Films v. Tri-Star Pictures, Inc.</u>, No. 01 Civ. 6615, 2001 WL 1824039, at *5 (C.D. Cal. Nov. 21, 2001) (finding no justiciable case or controversy where plaintiff had not

reached any preliminary agreements regarding the proposed film, had not "obtained commitments from 'key talent' such as a director and lead actors," had not contracted with any writers to create the screenplay, and was therefore not "immediately prepared" to produce the film); Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp., 80 F. Supp. 2d 815, 874-76 (N.D. Ill. 1999) (finding no controversy where plaintiff had not obtained regulatory approval for the casino it was requesting the court to deem non-infringing, had no plans to open a casino "on the drawing board," had not entered into any licensing agreements with any entity with the capacity to use the trademark in connection with a casino – or even identified such an entity – and could not tell the court how it intended to use its mark in the casino business, much less the name or location of such a casino); Lang, 895 F.2d at 764-65 (finding no controversy where the allegedly infringing ship's hull would not be completed until at least nine months after the filing of the complaint and "the accused infringers had not distributed sales literature, prepared to solicit orders, or engaged in any activity indicating that the ship would soon be ready for sea").

Where, however, a party has produced prototypes or samples of the allegedly infringing products, begun soliciting – and advertising to – potential customers, or otherwise invested significant sums of money in preparation for producing the goods, the case or controversy requirement is likely to be satisfied.  See Starter, 84 F.3d at 596 (finding a case or controversy where plaintiff had "designed styles and prepared prototype shoes; conducted a consumer survey; made strategic decisions regarding who should manufacture the shoes; hired an external licensing agent; . . . attempted to find a manufacturing partner"; and was therefore "immediately prepared, at the time the complaint was filed, to begin manufacture and sale of shoes bearing the

16

[marks at issue]")[7]; <u>Menashe v. V Secret Catalogue, Inc.</u>, No. 05 Civ. 239, 2005 WL 1580799, at * 6 (S.D.N.Y. July 7, 2005) (finding a controversy where plaintiffs had registered a domain name related to the mark, retained a web-designer, filed an intent-to-use application with the PTO, "paid for . . . and received four hundred samples of their product, as well as eight final articles that would serve as prototypes[,] and . . . engaged in activities including interviews and photo shoots to promote their lingerie line"); <u>Dr. Reddy's Labs., Ltd. v. aaiPharma Inc.</u>, No. 01 Civ. 10102, 2002 WL 31059289, at *9 (S.D.N.Y. Sept. 13, 2002) (finding an actual controversy where plaintiff had obtained tentative FDA approval of a generic version of a drug and spent millions of dollars on the development of the product, including on construction of a plant to manufacture it).

The foregoing precedent supports the conclusion that the current dispute satisfies the case or controversy requirement, and that the Court therefore has jurisdiction over plaintiff's claims, even under pre-<u>MedImmune</u> case law.  This is not a case in which defendants "do not appear to have advanced significantly beyond [their] statement of intent."  <u>Geisha</u>, 525 F. Supp. 2d at 1015.  Far from relying solely on defendants' mere intent to infringe, which courts have found insufficient to demonstrate an actual controversy, plaintiff has alleged that defendants have taken significant steps toward realizing that intent,[8] including "actively seeking licensees to publish a

---

[7] The <u>Starter</u> Court seems to have construed the phrase "immediately prepared" rather broadly.  The court itself acknowledged that Starter alleged only that it had "attempted to find a manufacturing partner," and not that it had actually found one.  Absent its having identified such a partner, it is unclear how Starter could literally have been "immediately prepared" to begin manufacture and sale at the time the complaint was filed.

[8] While defendants' motions to dismiss may be resolved on the basis of the pleadings, it should be noted that defendants have admitted to possessing documents pertaining to the Modern Maturity mark, including those related to: the design, creation, selection or adoption of the

magazine called 'Modern Maturity'" and "conduct[ing an] extensive analysis of the publishing

industry."  (Compl. ¶ 23.)  While defendants may not have settled on a licensing partner, the

Court must accept as true plaintiff's allegation that they have been actively searching for one.

Plaintiff need not wait for defendants to actually secure that partner before filing suit.  Securing a

licensing partner to undertake actual publication of the magazine presumably occurs only after

one has made a number of concrete decisions concerning the proposed content, design, and

layout of the magazine.  Thus, once a licensing partner is identified, little will remain for

defendants to do other than commence production, distribution, and sale of the magazine.

Since finding a case or controversy in this case is consistent with pre-MedImmune case

law, it is unnecessary to decide precisely how much that decision loosened the case or

controversy tests previously applied.  There is no doubt that the circumstances of this case

present a "substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, 549

U.S. at 127.  Accordingly, defendants' motion to dismiss for lack of jurisdiction is denied.[9]

---

Modern Maturity mark (Doc. Req. No. 6); defendants' intent to use the mark for a magazine
(Doc. Req. No. 9); defendants' plans to sell magazines under the Modern Maturity mark (Doc.
Req. No. 12); the nature of the planned Modern Maturity magazine (Doc. Req. No. 15); and the
business, marketing, and media plans for the magazine (Doc Req. No. 30).  (See also Dabney
Decl. Ex. 1; P. Mem. 4.)  Defendants' responses to plaintiff's document requests bolster the
conclusion that defendants have taken concrete steps to bring their plans to fruition.

[9] Contrary to defendants' argument, plaintiff's request for a declaration of the validity of
its registration is properly before the Court.  (D. Mem. 9-10.)  This case involves allegations of
trademark infringement that present an actual controversy, as well as a request for a declaration
of validity.  In such situations, "the interest in prompt adjudication far outweighs the value of
having the views of the PTO," particularly where a party seeks declaratory relief.  Goya Foods,
Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 853-54 (2d Cir. 1988); see also Burkina Wear, Inc.
v. Campagnolo, S.R.L., No. 07 Civ. 3610, 2008 WL 1007634, at *4 (S.D.N.Y. Apr. 9, 2008).

**III.      Motion To Dismiss for Failure To State a Claim**

Defendants also argue that because plaintiff has not alleged that defendants have actually

used the Modern Maturity mark in commerce, the complaint should be dismissed for failure to

state a claim.  (D. Mem. 2-8.)  In support of this argument, defendants reiterate their contention

that use in commerce cannot exist absent the actual publication, distribution, sale, or offering for

sale of a magazine bearing the Modern Maturity mark.  (D. Mem. 6; D. Reply Mem. 3.)  As

before, plaintiff contends that defendants' significant planning efforts, including creating

business plans, conducting extensive market analysis, and actively seeking licensees to publish

its magazine, satisfy the "use in commerce" standard.  (P. Mem. 1, 3-4.)  Because trademark

infringement and related claims brought pursuant to the Lanham Act and state law are not

contingent on the actual sale of an allegedly infringing product, and because plaintiff has alleged

that defendants have promoted the production of their magazine through use of the Modern

Maturity mark, defendants' motion to dismiss must fail.

"Trademark infringement, as codified in the Lanham Act, is not limited to situations

where the infringing mark has been used in connection with the actual sale of a product.  . . .

[Rather], courts have found that trademark infringement litigation may proceed even in the

absence of the product having been sold."  PDK Labs, Inc. v. Proactive Labs, Inc., 325 F. Supp.

2d 176, 180 (E.D.N.Y. 2004); see also id. ("[A]lthough Proactive has not actually sold the

product with the allegedly infringing packaging, its promotion of the product on its web site and

at trade shows is sufficient to constitute a tort under the language of the Lanham Act and the

supporting case law."); Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd., 662 F. Supp. 203,

205 (S.D.N.Y. 1987) (rejecting defendants' claim that injunctive relief could not be granted

where the product had not been advertised or sold to the general public and finding the "use in commerce" element satisfied where defendants sent one bottle of olive oil to a distributor, offered the product to another, and printed labels and cartons for the allegedly infringing oil); Harrison Servs., Inc. v. AI Margino, 291 F. Supp. 319, 321 (S.D.N.Y. 1968) (denying defendant's 12(b)(1) and 12(b)(6) motions to dismiss because plaintiff alleged more than a "mere intent" to violate the Lanham Act where it alleged that defendant had solicited department stores to participate in the catalog at issue and contacted manufacturers about displaying their products in the catalog).  Cf. Essie Cosmetics, Ltd. v. Dae Do Int'l, Ltd., 808 F. Supp. 952, 957 (E.D.N.Y. 1992) ("In a trademark infringement action, a court may grant injunctive relief 'even before defendant actually opens the business,' so long as the threatened act of defendant is 'imminent and impending.'); Hertz Corp. v. Knickerbocker, 206 F. Supp. 305, 306 (S.D.N.Y. 1962) (granting defendant's 12(b)(1) and 12(b)(6) motions to dismiss because the complaint did not allege that defendants had used the mark "in commerce and in conjunction with services," but only that the certificate of incorporation indicated an intent by the corporation to use such mark).

"To establish a trademark infringement claim under the Lanham Act, a plaintiff must show that the defendant used in commerce, without the plaintiff's consent, a 'reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion."[10]  Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 477 (2d

---

[10] According to the Lanham Act, "a mark shall be deemed to be in use in commerce – (1) on goods when – (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce."  15 U.S.C. § 1127.

Cir. 1996), quoting 15 U.S.C. § 1114(1)(a); see also 1-800 Contacts, Inc. v. WhenU.com, Inc.,
414 F.3d 400, 406-07 (2d Cir. 2005) (noting that a plaintiff can prevail under § 1114 where he
demonstrates that he has a valid mark entitled to protection, that defendant has used the mark in
commerce "in connection with the sale . . . or advertising of goods or services" without
plaintiff's consent, and that such use is likely to cause confusion).  In determining whether a
plaintiff has established a likelihood of confusion, a court considers the eight factors outlined in
Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961).  The factors are: (1)
strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the
proximity of the products; (4) the likelihood that the prior owner will bridge the gap (i.e., enter
the alleged infringer's market); (5) actual confusion; (6) the defendant's good faith in adopting
its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers.  Id.

Here, defendants argue only that plaintiff has failed to sufficiently allege their use in
commerce of the Modern Maturity mark.  As previously discussed, however, plaintiff has
alleged that defendants "are actively seeking licensees to publish a magazine called 'Modern
Maturity'" and "have conducted [an] extensive analysis of the publishing industry" in
preparation for the launch of such magazine.  (Compl. ¶ 23.)  It is reasonable to infer that, in
doing so, defendants have not only used the Modern Maturity mark, but have done so through
the channels of commerce.  Indeed, it would be difficult to fathom defendants pitching their
Modern Maturity magazine concept to a potential publisher without providing the publisher with
some sort of mock-up or prototype.  Any such mock-up or prototype would likely use the
Modern Maturity mark, as defendants concede that this is the name of their planned magazine.
Even without such a prototype, the pitch itself would necessarily involve the transmission of

21

ideas pertaining to magazine content, design, and layout, including the offending name.

Applicable standards of pleading do not require plaintiff to identify the specific manner in which

such information was transmitted.  See Fed. R. Civ. P. 8(a)(2) (requiring only "a short and plain

statement of the claim"); Twombly, 127 S. Ct. at 1974 (requiring plaintiff to allege only "enough

facts to state a claim to relief that is plausible on its face").  Plaintiff has alleged facts giving rise

to a reasonable inference that defendants have used the Modern Maturity mark in commerce, and

this is sufficient.

For the foregoing reasons, plaintiff has adequately alleged defendants' use in commerce

of the Modern Maturity mark.  Defendants' motion to dismiss is therefore denied.[11]

### CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is denied.

SO ORDERED.

Dated: New York, New York
       January 6, 2009

GERARD E. LYNCH
United States District Judge

.

---

[11] The Court need not address the propriety of any claim for injunctive relief.  Defendants consented to the preliminary injunction entered by the Court, and any comment on the merits of a claim for permanent injunctive relief would be premature.  See Patsy's Italian Restaurant, Inc. v. Banas, 575 F. Supp. 2d 427, 464 (E.D.N.Y. 2008), quoting Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006) (quotation omitted) ("To obtain a permanent injunction in a trademark action, a party 'must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'"); see also A.V. by Versace, Inc. v. Gianni Versace S.p.A., No. 96 Civ. 9721, 2005 WL 147364, at *5 (S.D.N.Y. Jan. 24, 2005) (same).